```
                                                    O
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RIBOT, PERRY HALL, JR., DEBORAH MILLS, ANTHONY BUTLER, JENNIFER BUTLER, JONATHAN LUNA and LOIS BARNES, individually, and on behalf of all others situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>FARMERS INSURANCE GROUP, FARMERS INSURANCE EXCHANGE, 21st CENTURY INSURANCE COMPANY and AIG INSURANCE SERVICE, INC.,<br><br>        Defendants. | Case No. CV 11-02404 DDP (FMOx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO EQUITABLY TOLL LIMITATIONS PERIOD AND FOR CORRECTIVE ACTION**<br><br>[Dkt. No. 209] |

Presently before the court is Plaintiffs' Motion to Equitably Toll Limitations and for Corrective Action. The court has considered submissions by the parties and adopts the following order.

**I. Background**

Plaintiffs are current and former employees of Farmers Insurance and Twenty-First Century Insurance Company (collectively

"Farmers" or "Defendants") who worked as "Customer Service Representatives" ("CSRs") in call centers in California, Oregon, Kansas, Texas, and Michigan. (Second Amended Complaint ("SAC") ¶¶ 1.4-1.5.)

**A. The Farmers-DOL Settlement**

The Department of Labor ("DOL") initiated an investigation from September 18, 2008, to September 17, 2010, of Farmers call centers in Oklahoma, Kansas, Oregon, Michigan, and Texas, based on allegations that Farmers did not properly compensate employees for pre-shift work. (Opp., Exh. A, FLSA Narrative Report.) On March 3, 2011, Farmers and the DOL entered into a settlement agreement covering the investigated facilities. (Opp., Exh. B.) In total, Farmers agreed to pay $1,520,705 in overtime back wages to 3,459 employees. (Opp., Exh. C., United States Department of Labor News Release, July 6, 2011.) Farmers also modified its operational procedures to come into compliance with FLSA requirements. The DOL found that Farmers had come into compliance by February 1, 2010, at the Grand Rapids, Olathe, and Hilsboro Service Point locations and by May 10, 2010, at the Lake Mary, Grand Rapids, and Olathe Help Point locations. (Exh. A., FLSA Narrative Report.)

The DOL prepared a list of the employees and the amount to be paid. (Opp. Exh. D.) Farmers prepared and the DOL approved a letter (the "Settlement Letter") including a Frequently Asked Questions section ("FAQ") for employees receiving the back pay settlement checks. (Opp. Exh. E.) The Settlement Letter was sent to affected employees on June 17, 2011. (Id.) Settlement payments to current employees were distributed the following week. When an employee received a check, he or she also signed a copy of the WH-

2

58 Form, "Receipt for Payment of Back Wages, Employment Benefits, or Other Compensation" ("WH-58"), prepared by the DOL, for each employee entitled to back pay. (See Mot., Exh. A.) The WH-58 included a notice stating:

> Your acceptance of this payment of wages and other compensation due under the FLSA based on the findings of the Wage and Hour Division means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time indicated above and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received this payment in the amount indicated above of the wages and other compensation due you.

(Mot., Exh. A.) In August 2011, former employees, including named Plaintiffs Luna, Perry, and Barnes, were sent packets containing a cover letter, the DOL-approved FAQ, and a WH-58. (Andernacht Decl. ¶ 7 and Opp., Exh. N.)

On July 6, 2011, the DOL issued a press release regarding the settlement. (Opp., Exh. C.)

**B. Plaintiffs' Action**

Plaintiffs filed their Complaint on March 22, 2011. They learned of the Farmers-DOL settlement when the press release was issued on July 6, 2011. On September 16, 2011, Plaintiffs filed the SAC which excluded from the lawsuit the time period and facilities covered by the Farmers-DOL settlement.

In this Motion, Plaintiffs seek (1) equitable tolling of the statute of limitations for Plaintiffs FLSA claims for the period between the date the suit was filed to the deadline for putative plaintiffs to opt in to the action, (2) issuance of a corrective

3

notice for those employees who accepted settlement checks, and (3) leave to file a Third Amended Complaint to amend class definitions to include those who accepted the settlement payment but may not have validly waived their claims.

**II. Legal Standard and Discussion**

    **A. Corrective Notice**

Plaintiffs seek to "modify the proposed notice to provide clarification for those who previously accepted settlement checks, executed waiver agreements or otherwise received notice about the DOL settlement." (Mot. at 23.) Under the FLSA, the "Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee . . . and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have" to additional recovery. 29 U.S.C. § 216(c). See also Walton v. United Consumers Club, Inc., 786 F.2d 303, 305 (7th Cir. 1986). For the release to be valid, the employee must both agree to release the claims and accept payment for the claims. "'[A]greement' is more than the acceptance of funds, as it must exist "independent of payment." Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th Cir. 2007) (citing Walton, 786 F.2d at 305-07). "Where notice is lacking, meaningful agreement—and thus valid waiver—cannot be found. In the DOL's amicus brief . . . , the government observed that 'an employee does not waive his right under section 16(c) to bring a section 16(b) action unless he or she agrees to do so after being fully informed of the consequences.'" Dent, 502 F.3d at 1146.

4

The issue here is whether the employees who accepted DOL Settlement Funds "agreed" to the settlement. Plaintiffs argue that the employees who were paid by the DOL Settlement did not "agree" to release their claims because they were not informed by the Settlement Letter or WH-58 of the Plaintiffs' pending action and because the Settlement Letter was misleading because Farmers did not give any indication of liability or the extent of the violations. They cite <u>Woods v. RHA/Tennessee Group Homes, Inc.</u>, 803 F.Supp.2d 789, 801 (M.D. Tenn. 2011), which held that defendant-employers had a duty to inform employees that a collective action was pending when waivers were signed. In <u>Woods</u>, the court reasoned as follows:

> Section 216 exists to give employees a choice of how to remedy alleged violations of the act - by either accepting a settlement approved by the DOL or by pursuing a private claim. An employer should not be allowed to short circuit that choice by foisting settlement payments on employees who are unaware that a collective action has already been filed. If employees are unaware of a pending collective action, they are not 'fully informed of the consequences' of their waiver, because waiving the right to <u>file</u> a lawsuit in the future is materially different than waiving the right to <u>join</u> a lawsuit that is already pending. In the former situation, an employee who wishes to pursue a claim must undertake the potentially time-consuming and expensive process of finding and hiring an attorney; in the latter, all an employee must do is sign and return a Notice of Consent form.

<u>Id.</u> at 801. Plaintiffs analogize <u>Woods</u> to this case because in both cases, neither the Notice nor the Settlement Letter indicated that there was a pending lawsuit on the same issue.

Although in certain situations, the fact that a settlement notice does not mention a pending lawsuit would require corrective action, the court finds that this is not such a situation. Whether a pending lawsuit was mentioned in the settlement notification

documents is one consideration among many in determining whether to issue a corrective notice.[1]

In the first place, the WH-58 contains a clear statement that employees who accept the payment give up their rights to bring suit "for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time indicated above." (Exh. A.) The employees who signed WH-58 were thus made aware that they would not be able to file or join a lawsuit concerning the same unpaid wages that they recovered in the settlement. Plaintiffs do not assert that the Waiver attempts to release more or other claims than were compensated by the settlement.

Plaintiffs allege what they deem to be other indicia of possible coercion. They argue that the Settlement Letter was misleading because (1) it creates the impression that the violations of the FLSA uncovered by the DOL investigation were isolated and speculative, rather than system and serious; (2) it leads recipients to believe that no wrongdoing had ever occurred because Farmers does not admit wrongdoing and states that it changed only its procedures, not its wage policy, as a result of

---

[1] The court in Woods considered not only the absence of mention of the pending lawsuit but also other facts that suggested possible coercion of employees, namely, the "sign with a list of employees' names stating that those employees '<u>must</u> come to the Administrative Building and see Michelle regarding payment for wages as agreed upon by the Stones River center and the Department of Labor,'" at which meeting there was not mention that they had the choice not to accept. Id. Because of this, the court found that "reasonable employees could have believed that the defendant was <u>requiring</u> them to accept the payment." Id. While the Woods court does not indicate that it is the combination of these two reasons that lead it to find the agreement potentially invalid, this court believes that lack of notice of a pending law suit, on its own, is not sufficient to render the agreement potentially invalid.

6

the investigation; and (3) it suggests that Farmers was unaware of any violations before they took place and that the DOL represented the employees interests in their settlement negotiations. (Mot. at 12-13.) Plaintiffs also allege that the meetings at which current employees received their checks were uninformative and left them confused as to what the settlement was about, and that former employees received even less information. (Id. at 15-17.) Finally, Plaintiffs assert that Farmers engaged in impermissible contact with two of the class representatives when it sent them settlement checks knowing that they were represented by counsel.

The court finds that these allegations are not sufficient to suggest that employees were coerced into accepting settlement payments. The court does not find it suspect that Farmers does not admit liability or emphasize the strength of Plaintiffs' case; this is typical of the language of class settlements. Plaintiffs have not explained precisely how it would have been a violation of the Rules of Professional Conduct for Farmers, the employer, to send a Settlement Notice to the named Plaintiffs, but assuming for the sake of argument that this would be a violation, it does not amount to coercion, as there was no apparent pressure or obligation for employees to accept the settlement beyond the letter.

There are strong public policy reasons for the court to refrain from interfering with the finality of a settlement, especially one negotiated by the DOL. The DOL was given the express authority to supervise the settlement of wage claims. 29 U.S.C. 216(c). The court would need to have a serious concern with the validity of the agreement to inject itself in an already

disbursed settlement nearly two years after the fact.[2]  The court finds that evidence that would give rise to such a concern is lacking in this case.

**B. Third Amended Complaint**

Because the court declines to issue a corrective notice, the court also DENIES Plaintiffs' request to amend its Complaint to modify its class definitions.

**C. Equitable Tolling**

Plaintiffs seek an order equitably tolling the statute of limitations for their FLSA claims for the time period between the date this suit was filed (March 22, 2011) to the deadline for potential plaintiffs to file their consent to join forms.  If such an order were granted, Plaintiffs would be able to seek recovery for claims dating back to March 22, 2008, so long as they had not already recovered for such claims.

The court has already granted in part Plaintiffs' request for equitable tolling.  (See Order Granting in Part and Denying in Part Motion for Class Certification and Motion for Conditional Class Certification.)  Nothing in this Motion has persuaded the court to alter its decision.  As discussed above, the court does not find that Settlement Letter or WH-58 were so misleading or coercive as

---

[2] Another salient difference between Woods and this action is that in Woods, the employees accepted the payments and signed the WH-58 forms on April 12 and 13, 2011, and plaintiffs' counsel filed a motion for a temporary restraining order or preliminary injunction on April 13, 2011, which was granted on April 14, 2011, and the court issued an order voiding the WH-58 forms.  Id. at 794. Here, the waiver forms were signed in April 2011, (Exh. B.), and Plaintiffs' attorneys challenged the validity of the agreement in June 2013.  Although Plaintiffs' counsel may not have had access to the waiver forms until recently, they were aware that the settlement had taken place after their lawsuit was filed and could have challenged its validity at an earlier date.

8

to justify corrective action.  Likewise, the court finds that there is not evidence of misconduct by Defendants sufficient to justify equitable tolling.  See Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999)("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time.")

**III. CONCLUSION**

For the reasons stated above, the Motion is DENIED.

IT IS SO ORDERED.

Dated: July 18, 2013

DEAN D. PREGERSON
United States District Judge