**LAW FIRM OF JOSEPH H. LOW, IV**
Joseph H. Low, IV (SBN. 194897)
E-mail: joseph@jhllaw.com
One World Trade Center, Suite 2320
Long Beach, California 90831
Telephone:   (562) 901-0840
Facsimile:    (562) 901-0841

**SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM**
Laureen F. Bagley (*Pro Hac Vice*)
E-mail: lbagley@sloanfirm.com
101 E. Whaley Street
Longview, TX 75601
Telephone:   (903) 757-7000
Facsimile:    (903) 757-7574
Attorneys for Plaintiffs
DAVID RIBOT, *et al.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RIBOT, PERRY HALL, JR., DEBORAH MILLS, ANTHONY BUTLER, JENNIFER BUTLER, JONATHAN LUNA, RITA DUNKEN, and LOIS BARNES, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS SERVICES, LLC., FARMERS INSURANCE EXCHANGE, and 21ST CENTURY INSURANCE COMPANY<br><br>Defendants. | Case No. CV-11-02404 DDP (JCx)<br>Assigned to Hon. Dean D. Pregerson<br><br>**PLAINTIFF'S FIRST AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPROVE PRELIMINARY PROPOSED SETTLEMENT**<br><br>*[Filed concurrently with Notice of Motion and Motion, Proposed Settlement Agreement; Notice of Proposed Class Action Settlement, Claim Form, Request for Exclusion, Declaration of Laureen Bagley, and {Proposed} Order]*<br><br>Date:          September 28, 2015<br>Time:          10:00 a.m.<br>Courtroom:   3 – 2nd Floor<br>Complaint Filed: March 21, 2011 |

PLAINTIFF'S FIRST AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO APPROVE PRELIMINARY PROPOSED SETTLEMENT

# TABLE OF CONTENTS

I.  Introduction ..................................................................................................1

II.  Case Summary ............................................................................................3

  A.  Allegations..................................................................................................2

  B.  History of Litigation ...................................................................................3

  C.  Defendants' Prior Settlement With the Department of Labor .......................3

  D.  Class and Collective Action Certification ...................................................4

  E.  The Defendants' Pending Motion for Summary Judgment ...........................4

  F.  The Parties Settled the Claims Post-Mediation...........................................4

  G.  Essential Terms of the Settlement ..............................................................5

    1.  Composition of the Class ....................................................................6

    2.  Releases by Class and Plaintiffs.........................................................8

    3.  Notice to the Class...............................................................................9

    4.  Formula to Pay Participating Class Members......................................9

    5.  Class Representative Incentive Payments.............................................9

    6.  Attorneys' Fees and Costs...................................................................9

    7.  Settlement Administration Costs........................................................10

III.  Argument .................................................................................................10

  A.  Judicial Review and Approval of Class Action Settlements ....................................................................................................10

  B.  The Settlement is Fair, Reasonable and Adequate......................................10

    1.  Standard............................................................................................11

    2.  Factual Basis for Settlement.............................................................11

    3.  Context of the Settlement – Plaintiffs' Risk, Expense, Complexity, and Likely Duration...........................................................................12

4. The Settlement Was the Product of Arm's- Length Negotiation........13

5. The "Claims Made" Process is Reasonable .......................................18

6. The Class Recovery is Reasonable ...................................................19

    a. This "Claims Made" Settlement provides average net recovery of $223.96 per class member based on an estimated 25 percent participation rate……………………………………………..14

    b. Potential recovery at trial for 6 minutes per day based on breach of contract claims provides average net recovery of $259.29 per class member with 100% participation rate............................14

    c. Potential recovery at trail for 6 minutes per day based on quantum meruit claims provides average net recovery of $159.29 per class member with a 100% participation rate…..16

    d. Potential recovery at trial for 6 minutes per day based on unjust enrichment claims provides average net recovery of $100.47 per class member with a 100% participation rate……………16

7. The Class Representative Payments are Reasonable ………………17

8. Class Counsels Fees & Costs are Reasonable………………………18

C. The Proposed Notice is Proper.......................................................................20

D. Final Approval Hearing.................................................................................22

IV. Conclusion...................................................................................................22

# TABLE OF AUTHORITIES

<u>Cases</u>

*Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 484 (E.D. Cal. 2010) ......8

*In re Heritage Bond Litigation,* 2005 WL 1594403 .................................9

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .........................9

*Van Bronkhorst v. Safeco Corp,* 529 F.2d 943, 950 (9th cir. 1976) ...................9

*Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ...........................9

*Officers for Justice v Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ...............................9

*Linney v. Cellular Alaska Pshp.,* 151 F.3d 1234,1242 (9th Cir.1998) .................10

*Nat'l Rural Telecommunications Coorperative v. DIRECTV Inc.,* 221 F.R.D. 523, 526 (C.D. Cal 2004) .............................................10

*Eilliams v Vukovich*, 720 F.2d 909, 922-923(6th Cir. 1983) ..........................12

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) .....17,18

*Rodriguez v. West. Publ. Corp*. 2007 U.S.Dist. LEXIS 74767, *47, 2007 WL 2827379, *15 (C.D. Cal. Sep. 10, 2007) .............................................17

*In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) ...................18

*In re Warner Commc'n Sec. Litig.*, 618 F.Supp. 735, 749-50 (S.D.N.Y.) 1985)....18

<u>Statutes</u>

29 U.S.C. 216 ............................................................4

Fed. R. Civ. P. 23(e) (2) ..................................................9

Fed. R. Civ. P. 23(c)(2)(B). ...............................................19

Fed. R. Civ. P. 23(e)(B) ..................................................19

Fed. R. Civ. P. 23(e) (4)..................................................19

- iii -

Other Authorities

Manual for Complex Litigation, Fourth, 22.661 at 438 (2004),.............................10

*Newberg* §14.6 (4th ed. 2002 and Supp 2004) …………………………………………18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

Plaintiffs David Ribot, Anthony Butler, Jennifer Butler, Rita Dunken, Deborah Mills, Lois Barnes, Jonathan Luna, and Perry Hall, Jr., seek preliminary approval of the parties' Settlement Agreement and Release of Claims ("Settlement Agreement"), which would provide monetary relief to current and former employees of the Defendants, Farmers Insurance Exchange, Farmers Services, LLC, and 21st Century Insurance Company.

At the initial hearing of Plaintiffs' Motion to Approve Preliminary Proposed Settlement on June 8, 2015, the Court denied Plaintiff's Motion without prejudice and requested that the parties provide additional information regarding the settlement.   Accordingly, Plaintiffs' file this First Amended Motion to Approve Preliminary Proposed Settlement and provide the following additional information requested by the Court:

● In 2011, Defendants entered into a $1.52 million settlement with the Department of Labor following an investigation into potential unpaid pre-shift time spent booting up computers.   The settlement compensated 3,459 call center workers, many of whom are class members in the present litigation, for six minutes of time per workday.

● In early 2010, Defendants changed their timekeeping systems to prevent call center employees  from booting up their computers prior to clocking in for their shifts.   Thus, no additional potential liability for the type of off-the-clock work alleged here has accrued since that time.

● During discovery and investigation in this action, a number of class members stated that they never worked off the clock.

● Defendants contend that most class members either were already fully compensated through the DOL settlement, or else never performed any uncompensated pre-shift work.

● Defendants have a pending Motion for Summary Judgment that, if granted, will eliminate nearly all of the claims in this action.   All that will remain would be a small group of individuals with FLSA claims not released in

connection with the DOL settlement, and a small California state law subclass. Total estimated liability for the remaining claims is about $88,114,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPROVE PRELIMINARY PROPOSED SETTLEMENT

much less than the actual settlement sum of $600,000.

● The proposed settlement is a $600,000 with no reversion of funds to Defendants. The settlement contemplates a "claims made" process for the net settlement distribution to class members, so that only those class members who believe they have not already been fully compensated for their work can submit claims, while those who believe they have already been paid for all of their work time can choose to not submit claims.

● If Plaintiffs are successful in challenging Defendants' pending Motion for Summary Judgment, and the additional hurdle of Defendants' motion to decertify the class, potential recovery at trial is estimated at between $963,838 and $1.85 million. After accounting for fees and costs, the estimated average recovery per class member would range from between $100.47 and $256.29.

● Because the parties are proposing a "claims made" process for the distribution of the net settlement, it is not possible to provide a precise figure for the anticipated average recovery by class members under the settlement. Based on its experience in similar settlements, however, the settlement administrator, Rust Consulting, estimates a 25% participation rate. Based on this participation rate, the average recovery per class member under the proposed settlement is estimated to be $223.96.

Considering the risks that Plaintiffs faced in moving forward in this action, this settlement, which should fully compensate those class members who believe they were not paid for all of their work time, is fair and reasonable, and should be preliminarily approved. The Declaration of Plaintiffs' counsel, Laureen Bagley, is attached hereto as Exhibit "5" and provides her attestation of the pertinent facts set forth in this Motion and Memorandum of Points and Authorities.

## II.    Case Summary

### A.    Allegations

The facts of this case are well known to the Court. The Defendants employed and continue to employ thousands of employees who staff their HelpPoint and ServicePoint Contact Centers. Colloquially referred to as Customer Service Representatives ("CSRs"), Plaintiffs alleged that they and other CSRs were

required to work, on average, between 5 to 15 minutes off-the-clock prior to the start of their shifts. This time was alleged to be necessary to prepare their workstations so that they could begin taking phone calls as soon as their scheduled shifts started.

Defendants deny that CSRs were required to work off the clock prior to their shifts or at all. At all times relevant to this litigation, Defendants had written policies prohibiting off-the-clock work that they assert were strictly enforced. Furthermore, Defendants assert that shifts were staggered so that it was not necessary for CSRs to begin taking calls the moment their shifts started. In any event, as of early 2010, Defendants modified their timekeeping and telephone systems to prevent call center workers from performing any work off the clock.

In addition to bringing claims for violation of the Fair Labor Standards Act ("FLSA"), Plaintiffs' causes of action included state law claims including but not limited to breach of contract, unjust enrichment, and *quantum meruit*.

## B. History of Litigation

As the Court has noted, this was a case that was aggressively litigated on both sides, and extensive discovery was conducted over the course of years of litigation.

Defendants produced approximately 4,263 pages of documents in discovery. In addition, the U.S. Department of Labor produced approximately 6,000 pages of documents reflecting their prior investigation into the Defendants' pay practices and the resulting settlement, through which many employees who are also Class Members in the present litigation received back pay and executed releases.

A total of 32 depositions were taken in this case. Plaintiffs took the depositions of three of the Defendants' corporate representatives, Trudi Andernacht, Jennifer Lingo, and Laura Booth (twice), who were designated to give testimony on the administration of the Defendants' policies and practices, along with 10 other witnesses for Defendants. Defendants took the depositions of all eight Class Representatives and 11 of their supporting witnesses.

## C.      Defendants' Prior Settlement With the Department of Labor

In 2011, Defendants reached a settlement with the DOL to resolve FLSA claims concerning the alleged unpaid pre-shift work by customer service representatives at various call centers across the country--the same claims that Plaintiffs sought to prosecute in the present case.  The DOL settlement paid out $1.52 million to 3,459 call center workers, who released their FLSA claims in return.  The settlement was based on six minutes' worth of pay per workday for each employee.  Many of the employees who were compensated for their FLSA claims through this settlement are also included in the Rule 23 state law classes in the present litigation, as state law claims were not released in the DOL settlement.

## D.      Class and Collective Action Certification

On July 17, 2013, the Court certified five state law subclasses under Rule 23(b)(3) and conditionally certified a collective action under 29 U.S.C. 216.

## E.      The Defendants' Pending Motion for Summary Judgment

The majority of the potential exposure in this case stems from Plaintiffs' Kansas, Michigan, Oregon and Texas state law claims.  These claims were based primarily on the theory that job offer letters provided to class members constituted employment contracts that Defendants breached.  At the time the settlement was reached, Defendants had filed a Motion for Partial Summary Judgment as to these claims (Docket No. 294).  This motion argues that the Plaintiffs had been paid everything that was promised to them (and more) in their job offer letters, and thus no breach of contract had occurred.  The motion also argued that Plaintiffs' claims for quantum meruit, unjust enrichment, and other claims, are deficient.

The maximum potential recovery for the claims that are not at issue in connection with Defendants' motion is limited.  The estimated maximum exposure on the remaining California State Law Claims is approximately $77,197.20.  The estimated maximum exposure in connection with the remaining FLSA claims (those not already released by a prior settlement with the DOL or barred by the statute of limitations) is about $10,917.60.  Thus, if Defendants' Motion for Partial Summary Judgment is granted, Plaintiffs' potential recovery would be reduced to about $88,114.80.

## F.    The Parties Settled the Claims Post-Mediation

The Parties met for mediation on January 15, 2015 at defense counsels' office in Century City, California. The mediator, Hunter Hughes, a respected and experienced mediator of wage and hour class actions, oversaw the mediation. After negotiating for most of the day, the parties agreed on the terms of a tentative settlement. Thereafter, on January 21, 2015, the parties entered into a memorandum of understanding memorializing the essential terms of settlement. The Parties then negotiated and agreed to a comprehensive Settlement Agreement. (A complete copy of the Settlement Agreement is attached as Exhibit "1" to this Motion.)

## G.    Essential Terms of the Settlement

### 1.    Composition of the Class

As set forth in the Settlement Agreement, the scope of the settlement specifically includes Class Members who fall within the class definitions set forth in the Court's certification order. The settlement also includes employees who worked at Farmers' Los Angeles Service Center and 21st Century's Woodland Hills facility and timely opted-in to the FLSA portion of this litigation.

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class comprised of a 52-member FLSA collective action limited to 21st Century's Woodland Hills facility (February 24, 2009 through January 31, 2010) and Farmers Services' Simi Valley facility (February 24, 2009 through April 24, 2009) and five state law Rule 23 classes (California[1], Kansas, Texas, Michigan, and Oregon). The Class Members were classified as "Customer Service Representatives or had a similar customer-facing job position with the central duty of taking inbound telephone calls from policyholders and agents" up until 2010, when Defendants made certain timekeeping system changes that eliminated the possibility of employees working off the clock. The

---

[1] The employees who worked at the Woodland Hills facility in California are excluded from the Rule 23 class based on releases they signed in exchange for severance when that facility was closed.

following list defines the five Rule 23 state classes[i] comprising 3571 Class Members:

- California State Law Class: Simi Valley Facility (March 22, 2007 to April 30, 2009);

- Kansas State Law Class:  Olathe HelpPoint (March 22, 2006 to May 10, 2010) and ServicePoint facilities (March 22, 2006 to February 1, 2010);

- Michigan State Law Class:  Caledonia HelpPoint (March 22, 2005 to May 10, 2010) and ServicePoint facilities (March 22, 2005 to February 1, 2010);

- Oregon State Law Class:  Hillsboro ServicePoint (March 22, 2005 to May 10, 2010) and Portland Claims Service Center (March 22, 2005 to May 10, 2010); and,

- Texas State Law Class:  Austin ServicePoint (March 22, 2007 to February 1, 2010).

(2)    Defendants will pay a total sum of SIX HUNDRED THOUSAND DOLLARS ($600,000) ("Settlement Amount") to settle all claims on a class-wide basis. The settlement is non-reversionary, and the entire Settlement Amount will be paid out by Defendants.  The following will be deducted from the Settlement Amount: (1) attorneys' fees; (2) costs to be paid to Class Counsel; (3) incentive payments to the Class Representatives; (4) settlement administration costs. The remainder will constitute the "Net Settlement Amount" and will be available for distribution to Class Members. If the Court approves the deductions from the Settlement Amount, the Net Settlement Amount will be approximately $200,000.[2]

(A)    Settlement Administration Costs, currently estimated at $29,986, to be paid to the mutually agreed upon class action claims administrator, Rust Consulting. ("Settlement Administrator");

---

[2] Plaintiffs have reduced their requested recovery for costs to ensure that $200,000 remains for distribution to the class.

(B)     Class Representative Incentive Payments in the total amount of $24,000, with $3,000.00 payable to each of the Class Representatives, David Ribot, Anthony Butler, Jennifer Butler, Rita Dunken, Deborah Mills, Lois Barnes, Jonathan Luna, and Perry Hall, Jr. These payments are in addition to their individual settlement payments.

(C)     Attorneys' fees in the amount of 33% of the settlement amount, ($200,000), plus additional litigation costs of up to $146,000, payable to Sloan, Bagley, Hatcher & Perry Law Firm, the Law Firm of Joseph H. Low, IV and the Zelbst Law Firm. (Collectively "Plaintiffs' Counsel" or Class Counsel").

(3)     A Net Settlement Amount (the Class Settlement Amount minus the Settlement Administration Costs, Class Representative Incentive Payments, and the Attorneys' Fees and Cost Award) the entirety of which shall be allocated to Participating Settlement Class Members on a pro rata basis according to the number of weeks they worked during the Settlement Class Period compared to the aggregate number of workweeks worked by all participating Class Members during the Class Period.

(a)     Settlement funds will be paid on a "claims made" basis. Each Class Member will have the opportunity to make a claim for their proportionate share of the Net Settlement Amount.

(b)     Individual Settlement Payments of Class Members who choose exclusion from the Settlement or choose not to make a claim shall be distributed pro rata to the other Participating Settlement Class Members.

## 2.     Releases by Class and Plaintiffs

The Representative Plaintiffs and Class Members who do not opt out of the settlement and all opt-in plaintiffs (individuals who filed opt-in forms during the course of this litigation) will release certain claims against the Defendants and related persons or entities. These claims include all federal and state wage and hour claims that are related to unpaid wages, minimum wage, and/or overtime wages,

- 8 -

that they brought or could have brought against the Defendants that arise or relate to the facts as alleged in the Second Amended Complaint. All California Class Members will also waive any rights under California Civil Code Section 1542.  All pending claims will be dismissed with prejudice.

### 3.    Notice to the Class

Court approved notice will be sent to all Class Members via regular First-Class U.S. Mail, using the most current mailing addresses available.  A draft notice is attached hereto as Exhibit 2.

### 4.    Formula to Pay Participating Class Members

The formula that will be used to pay participating Class Members and opt-in plaintiffs is one that is commonly used in wage and hour cases. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 484 (E.D. Cal. 2010). Each Class Member will be paid according to the following formula: (1) the Class Member's total number of workweeks as measured by the later of their beginning date in a class position or the start of the applicable class period and the earlier of their last day of employment or January 1, 2009 (the start of the covered period under the terms of the prior DOL settlement); (2) divided by the aggregate number of workweeks of all Class Members who file claims and opt-in Plaintiffs at all call centers at issue (with the division rounded to four decimal places); (3) multiplied by the Net Settlement Amount.

### 5.    Class Representative Incentive Payments

In return for their service to the class, the Class Representatives are to receive an additional sum for their services, efforts, and risks undertaken on behalf of the class. All Class Representatives are to receive an additional $3,000 as an incentive award in addition to their individual settlement payments.

### 6.    Attorneys' Fees and Costs

Class Counsel will request, and Defendants will not oppose, a fee award of up to 33.3% of the Class Settlement Amount, plus additional costs actually incurred, up to $146,000.00.

- 9 -

### 7.    Settlement Administration Costs

The Settlement Administrator is to be paid out of the Class Settlement Amount, with estimated administration costs not greater than $29,986.

## III.   Argument

## A.    Judicial Review and Approval of Class Action Settlements

Federal Rule of Civil Procedure 23 provides that any compromise of a class action must receive Court approval.  In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." (*In re Heritage Bond Litigation, 2005 WL 1594403, citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This policy is driven by "an overriding public interest in settling and quieting litigation…[t]his is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." (*Van Bronkhorst Safeco Corp*, 529 F.2d 943, 950 (9th Cir. 1976).

Federal Rule 23(e) provides a three step process for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice to the class so that they have an opportunity to exclude themselves from the settlement; and (3) a final fairness hearing, at which time the court evaluates the fairness, adequacy and reasonableness of the proposed settlement. Fed. R. Civ. P. 23(e)(2). This process enables the court, consistent with its duty as the guardian of the Class Members' interests, to ensure that Class Members' due process rights are not abrogated.   At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." (*Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair adequate and reasonable." (*Class Plaintiffs v. Seattle*, 955 F.2d at 1276.  See also *Officers for Justice v Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

**B.      The Settlement is Fair, Reasonable and Adequate**

   **1.      Standard**

           Although at this stage of preliminary approval, the Court is not expected to engage in the more rigorous analysis as is required for final approval (See Manual for Complex Litigation, Fourth, 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing some or all of the following non-exclusive factors: (1) the strength of the Plaintiffs' case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant.[3]  *See Linney v. Cellular Alaska Pshp.,* 151 F.3d 1234,1242 (9th Cir.1998).

   **2.      Factual Basis for Settlement**

   The information available has enabled Class Counsel and the Class Representatives to make an intelligent decision about the Settlement. The investigation of the class claims against the Defendants included: (a) a review of relevant documents, namely the Class Representatives' personnel files, wage statements, Defendants' written employment policies, documents obtained from the Department of Labor, and other documents; (b) propounding written discovery on the Defendants; (c) deposing Defendants' corporate representatives and 28 witnesses; (c) extensive research with respect to applicable law and the Defendants' potential defenses and procedural arguments.

   A major factor that played into Class Counsel's analysis was the fact that the vast majority of the Class Members have already received compensation for 6 minutes of work per day as part of the Farmers Defendants' 2011 settlement with the U.S. Department of Labor, for which the Farmers Defendants would be credited in the resolution of the Class claims at trial.

---

[3] Not all of the listed factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunications Cooperative v. DIRECTV Inc.* 221 F.R.D. 523, 526 (C.D. Cal. 2004)

Farmers would have appealed any judgment against it, and it would have been many years before money (if any) was paid to the class.  Farmers has also stated that it intends to appeal the court's order tolling the statute of limitations on the FLSA claims.

### 3. Context of the Settlement – Plaintiffs' Risk, Expense, Complexity, and Likely Duration

Class Counsel evaluated the strengths of the class claims in the context of the risk, expense, complexity and likely duration of the litigation.

Class Counsel evaluated the following risks of continuing this litigation, which would have eliminated all of Plaintiffs claims except for the remaining California state law claims and remaining FLSA claims, for which the total estimated exposure is approximately $88,114.20 if Plaintiffs are able to prevail at trial.

*Will the amount of "off-the-clock" time be considered de minimis?*

Defendants have raised a *de minimis* defense to Plaintiffs' claims for small amounts of uncompensated pre-shift work.  Defendants contend it took less than 5 minutes to boot up the computers in question; the DOL settlement was calculated on 6 minutes per day.  This is within the range of what courts have considered to be *de minimis* in other cases (i.e., less than 10 minutes per day).

Numerous courts have held that daily periods of approximately 10 minutes or less are *de minimis*. *Lindow*, 738 F.2d at 1062 (collecting cases); *see also Troester v. Starbucks Corp.,* 2014 WL 1004098 at *6 (C.D. Cal. Mar. 7, 2014) (granting summary judgment on off-the-clock claim where the amount of unpaid time on any day fell below the "10-minute *de minimis* benchmark"); *Busk.,* 713 F.3d at 532–33 (concluding that five minutes daily spent passing through security clearance on way to lunch break was *de minimis*);  *Farris v. County of Riverside,* 667 F.Supp.2d 1151, 1165 (C.D.Cal.2009) ("10 minutes is the standard threshold for determining whether something is *de minimis*"); *Alvarado v. Costco Wholesale Corp.*, 2008 WL 2477393, at *3–4 (N.D.Cal. June 18, 2008) (holding that the plaintiff was not entitled to compensation for time spent waiting for security checks at the end of closing shifts because the "several minutes" that the plaintiff

had to wait to be let out of the building was *de minimis*); *Abbe v. City of San Diego*, 2007 WL 4146696, at *7 (S.D.Cal. Nov.9, 2007) ("Here, it is undisputed that donning and doffing protective gear ... takes less than 10 minutes.... Therefore, time spent donning and doffing safety gear is *de minimis* and non-compensable as a matter of law.").

Because the DOL settlement was for 6 minutes per day and there is significant testimony that the off the clock time was 10 minutes or less Plaintiffs' counsel believes that the *de minimus* argument asserted by Defendants is credible and must be factored into the decision to enter into settlement.

### *Will Defendant prevail on its Motion for Summary Judgment dismissing Plaintiffs' breach of contract claims?*

If Defendants' pending MSJ is granted, it would eliminate all of Plaintiffs' state law claims except for those arising from California law.  If this occurred the maximum recovery for the remaining FLSA and California state law claims would be approximately $88,144.20

The state law claims are without question the more difficult claims to prevail on because of the burden of proof and the defenses available to Defendant. Defendants steadfastly denied any liability and mounted a vigorous defense to Plaintiffs' claims.  If Defendants prevailed at trial, then neither Plaintiffs nor the Class would have recovered anything.

### 4.      The Settlement Was the Product of Arm's- Length Negotiation

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiation. *Eilliams v. Vukovich*, 720 F.2d 909, 922-923(6th Cir. 1983).  The proposed settlement here is the product of many hours of arm's length negotiations between counsel for Plaintiffs and counsel for Defendants.  The parties have conducted significant investigation of the facts and law during the prosecution of this action, and have vigorously litigated all aspects of this litigation, as evidenced by the 308 filings listed on the docket in this case.  While Plaintiffs reasonably believed that they would prevail on the merits of the case, they also had to consider the arguments and evidence proffered by Defendants, which had the potential to defeat Plaintiffs' claims.  The

- 13 -

assistance of a well-respected mediator, highly experienced in complex class actions, was invaluable in helping the Parties come to a meeting of the minds, notwithstanding the starkly divergent views as to the prospects of Plaintiff's success, not just on retaining certification but also on the merits.  The mediation was adversarial, conducted at arm's length, and the consequent settlement was the outcome of an informed and educated analysis of Defendants' liability and exposure in relation to the costs and risks presented by the claims.

Based on the discovery, procedural posture, and evaluation of the likelihood of success at trial, along with the mediator's input, Class Counsel believes that the settlement and its terms are fair, reasonable, and adequate.  The Settlement is in the best interest of the Settlement Class, in light of all known facts and the uncertain circumstances of continued litigation, namely Defendants' summary judgment argument relative to the breach of contract claims, a potential appeal concerning the Court's decision to toll the FLSA's statute of limitations, and the possibility that Defendants could prevail at trial.

Defendants have concluded that any further defense of this litigation would be protracted and expensive for all Parties.  Substantial amounts of time, energy and resources of Defendants have been and, unless this settlement is made, will continue to be, devoted to the defense of the claims asserted by Plaintiffs. Defendants have, therefore, agreed to settle this matter on the terms set forth in the Settlement Agreement and Release of Claims, to put to rest the claims set forth in the operative complaint.

### 5.    The "Claims Made" Process is Reasonable

Because many class members either were already paid through the DOL settlement, or else reported no unpaid pre-shift work, the distribution of the net settlement here is on a "claims-made" basis, meaning those employees who feel they have not been fully compensated can make claims, while those who feel they have been fully compensated can opt not to participate in the settlement. The claims made process also allows any residual compensation not paid to non-participating class members to be distributed to participating class members.  This method of administering the settlement proceeds assures that every dollar of the net settlement proceeds will be distributed to participating class members and not

- 14 -

escheat to the respective States where it may never be recovered by class members. This is a legitimate concern in this case given that many class members have claims dating back to 2005 and 2006, and may be difficult, if not impossible to locate. It is important to note that while the distribution of the net settlement is on a claims made basis, there is no reversion of funds to Defendants. Rather, the unclaimed amounts will be re-distributed on a pro rata basis to the class members who make claims.

## 6. The Class Recovery is Reasonable

### a. This "Claims Made" Settlement provides average net recovery of $223.96 per class member based on an estimated 25 percent participation rate.

Because the distribution of the net settlement is on a claims made basis, it is not possible at the present time to provide a precise estimate of the average net recovery per class member. Based on its experience in administering other similar settlements, however, the claims administrator anticipates that approximately twenty five percent (25%) of the class members will make claims here. (See Declaration of Justin Parks Exhibit "6"). Using this assumption, the number of potential class members participating in the settlement will be approximately 893, with an estimated average recovery per class member of $223.96. This represents over 19 hours' worth of pay per claimant, based on the average hourly rate of $11.78.[4]

### b. Potential recovery at trial for 6 minutes per day based on breach of contract claims provides average net recovery of $256.29 per class member with a 100% participation rate.

Assuming that Plaintiffs were to prevail at trial, Plaintiffs have calculated potential recovery for the breach of contract claims, based on six (6) minutes' worth of pay per day[5] at an average rate of pay of $11.78, for the longest period

---

[4] This hourly rate represents the average hourly rate for the named Plaintiffs.

[5] Defendants contend that the actual average amount of time necessary to boot up computers was less than 5 minutes. Furthermore, the timekeeping system rounded the time entries of most class members to the nearest quarter hour, meaning that anything less than 8 minutes spent booting up would not have affected their pay in any event.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
APPROVE PRELIMINARY PROPOSED SETTLEMENT

permitted by each state's applicable statute of limitations, at $1,847,514.  After deducting attorney's fees of thirty three and a third percent ($615,222.16) and costs of litigation ($300,000)[6] the net amount for distribution to the class would be $915,222.16.  The total number of class members with breach of contract claims is 3571.  Thus, the average recovery per class member would be $256.29 if there was a 100 percent participation rate, versus an average recovery of $223.96 for claimants under the proposed settlement, assuming a 25% claims rate.

The following chart shows a comparison by call center of the average potential recovery for breach of contract claims for 100 percent of the class, following trial, versus the projected recovery from the proposed settlement amount, based on a 25% participation rate:

|  | Potential Recovery 100% | Settlement Recovery 25% participation |
|---|---|---|
| Olathe Kansas Service Point | $262.75 | $275.80 |
| Olathe Kansas Help Point | $234.07 | $177.10 |
| Grand Rapids MI Service Point | $365.87 | $274.62 |
| Grand Rapids MI Help Point | $241.91 | $184.72 |
| Portland OR BCO | $405.53 | $424.49 |
| Portland OR Service Point | $244.91 | $256.84 |
| Austin TX Service Point | $231.51 | $177.00 |
| Simi Valley CA Rule 23 | $202.24 | $167.21 |
| Simi Valley CA FLSA | $16.38 | $17.16 |
| Woodland Hills, CA FLSA | $119.12 | 101.10 |

---

[6] The Plaintiffs' current case expenses are $208,986.00.  It is anticipated that the amount of expenses will increase by at least $100,000 if the matter proceeds to trial.

- 16 -

### c.   Potential recovery at trial for 6 minutes per day based on quantum meruit claims provides average net recovery of $156.29 per class member with a 100% participation rate.

If Defendants prevail on their pending Motion for Summary Judgment dismissing Plaintiff's claims under breach of contract, Plaintiff's potential recovery at trial will be dramatically reduced because of shorter statutes of limitations for quantum meruit claims in California, Kansas and Oregon.[7]   If Plaintiffs were to prevail on their quantum meruit claims at trial, the maximum potential recovery for the those claims, based on six (6) minutes per day at an average rate of pay of $11.78, for the longest period permitted by each state's applicable statute of limitations, would be $1,053,475.20.  After deducting attorney's fees of thirty three and a third percent ($350,667.93) and costs of litigation ($300,000). The net amount for distribution to the class would be $417,807.27.  The total number of class members for the quantum meruit claims is 2663.  Thus, the average recovery per class member would be $156.29 if there was a 100 percent participation rate, much less than the estimated average recovery of $223.96 for claimants under the proposed settlement, assuming a 25% claims rate.

### d.   Potential recovery at trial for 6 minutes per day based on unjust enrichment claims provides average net recovery of $100.47 per class member with a 100% participation rate.

If Defendants prevail on their pending Motion for Summary Judgment dismissing Plaintiff's claims under breach of contract, Plaintiff's potential recovery at trial will also be dramatically reduced because of shorter statutes of limitations for unjust enrichment claims in California, Kansas, Texas and Oregon.[8]    If Plaintiffs were to prevail on their unjust enrichment claims at trial, the maximum potential recovery for those claims, based on six (6) minutes per day at an average rate of pay of $11.78, for the longest period permitted by each state's applicable statute of limitations, is $963,838.80.   After deducting attorney's fees of thirty three and a third percent ($385,535.52) and costs of litigation ($300,000), the net

---

[7] Note that these claims were also included in Defendants' pending motion for summary judgment.

[8] Note that these claims were also included in Defendants' pending motion for summary judgment.

amount for distribution to the class would be $278,303.28.  The total number of opt-ins and class members for the unjust enrichment claims is 2770.  Thus, the average recovery per class member would be $100.47 if there was a 100% participation rate, versus an average recovery of $223.96 for claimants under the proposed settlement, assuming a 25% claims rate.

The settlement is reasonable and will likely result in each participating class member recovering near 100% of their unpaid wages without the risk and uncertainty of trial and increased costs.

## 7. The Class Representative Payments Are Reasonable

Providing a payment to class representatives for their services is both customary and appropriate.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)   Where "class representatives have conferred benefits on all other class members…they deserve to be compensated accordingly."

> The purpose for which courts award incentive payments are three fold.  First, incentive awards compensate class representatives for work done by them on behalf of the class under a quantum meruit theory. (Citations omitted.) This is the same reason attorney's fees, expert fees, and other costs of litigation are generally deducted from the common fund - to prevent a windfall to the class. Second, incentive awards are used to compensate class representatives for risks undertaken by them in bringing the class action (Citations omitted.) These risks include retaliation resulting in personal or financial harm, discrimination, trouble finding employment, and significant financial risk.  (Citations omitted.)   Third, some courts award incentive awards to class representatives in recognition of their willingness to act as a private attorney general.   (Citations omitted.) (*Rodriguez. West. Publ. Corp.* 2007 U.S.Dist. LEXIS 74767, *47, 2007 WL 2827379, *15 (C.D. Cal. Sep. 10, 2007).

All of the named Plaintiffs have spent considerable time and effort in the prosecution of the class claims, including spending time learning about their

- 18 -

obligations as class representatives, providing documents, preparing declarations, locating additional Class Members to prepare declarations in support of certification, preparing for and testifying at lengthy depositions, assisting in locating additional Class Members and witnesses, and consulting with Class Counsel on a regular basis to understand the status of this litigation.

In volunteering to serve as class representatives, each one of these individuals has assumed great individual risk on behalf of the classes that they represent. As a result, each one of these individuals is entitled to an incentive award of $3,000.00, sums that are fair, reasonable, and appropriate under the circumstances.

## 8. Class Counsels' Fees & Costs are Reasonable

Class Counsel requests that the Court approve a 33.3% contingency fee for their services in this case.  The Defendants do not contest that this amount is reasonable.  Additionally, Class Counsel seeks up to $146,000.00 from the Class Settlement Amount for actual costs and expenses incurred by Class Counsel in prosecuting this case over three years, which included 3571 Class Members in five states.  These expenses include $24,576.36 in administration fees for the notice to the Class following certification.

Although there are no bright line rules in this area, thirty to fifty percent of the settlement amount is commonly awarded as attorneys' fees in cases where the common fund is relatively small.  *See* Newberg §14.6 (4th ed. 2002 and Supp. 2004; *Van Vranken*, 901 F. Supp. 294 (stating that most cases where 30 to 50% is awarded involved settlement funds of under $10 million); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981 (awarding attorney's fees consisting of 45% of $7.3 million settlement); *In Re  Warner Commc'n Sec. Litig.*, 618 F.Supp. 735, 749-50 (S.D.N.Y.) 1985 (attorneys' fees up to 50% of the total possible value of the settlement permissible).

Given the results achieved in light of the circumstances of this litigation, the requested 33.3 % percent is on the lower range of what is commonly awarded and considered reasonable.  In order to properly handle and prosecute this case, Class Counsel was precluded from taking other cases.  Further, this case was taken on a contingent fee basis, with Class Counsel paying for the costs up front. The ultimate

result was far from certain.  Class Counsel incurred substantial out of-pocket costs, including, but not limited to, filing fees, depositions, travel expenses, copy charges, telephone charges,  mediator's fees, and FedEx charges in the amount of $179,000 and total expenses of $208,986.00.  Class Counsel are waiving recovery of any expenses over $146,000, in order to ensure that at least $200,000 is available for distribution to the class.

The case was vigorously defended, as most wage and hour class actions are given the high stakes involved in retroactive and prospective relief.  This case was no exception.  To date, Class Counsel has devoted over 1600 hours to litigating this case. From March 22, 2011 through June 9, 2015, there were 314 pleadings filed.

### C.     The Proposed Notice is Proper

The Court is required to direct to the Settlement Class Members "the best notice practicable" under the circumstances including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B)  "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise."  Fed. R. Civ. P. 23(e)(B).  Because this class action was previously certified under Rule 23(b)(3), Class Members who did not previously opt-out are afforded an additional opportunity to request exclusion. Fed. R. Civ. P. 23(e)(4).

The parties have agreed upon a Notice Packet, and the terms and conditions upon which the Noticed Packet is to be served on members of the Plaintiffs' Class is by first class United States Mail.  The submitted proposed notice satisfies the requirements of due process. Here, the names and addresses of the Settlement Class Members have already been ascertained, rendering individual notice by mail the best notice practical.

Within 14 days after entry of the Order Granting Preliminary Approval, Defendants will submit Settlement Class Lists to the Settlement Administrator. Within 10 days after receipt of the Settlement Class Lists, the Settlement Administrator will mail the Notice of Pendency of Class Action Settlement "Notice Packet", which contains the Notice of Proposed Class Action Settlement, (attached hereto as Exhibit 2), Claim Form (attached hereto as Exhibit 3) and Request to be

Excluded, attached hereto as Exhibit 4), to all Settlement Class Members via regular First-Class U.S. Mail, using the most current mailing addresses available. The Settlement Administrator will first update the Class Member addresses on the Class List by searching the national Change of Address database and thereafter will attempt to re-mail any undeliverable notices to either the applicable forwarding address or by reference to a single skip-trace or other search using the name, address, and/or Social Security Number of the Settlement Class Member involved.

Any Settlement Class Members who have not already opted out of the action, may Request Exclusion from the Action by signing, postmarking, and mailing a written Request for Exclusion no later than 60 days after the Notice Packet is mailed out. FLSA Opt-In Class Members who have timely filed Consent to Join Forms are not entitled to submit a Request for Exclusion.

The Notice packet contains a "Claims Application" which Class Members will be required to submit in order to receive funds from the settlement fund. The claims application assures that the settlement funds will have the best chance of actually being received by Class Members and not end up escheating to the State and never being recovered. The class periods involved in this case go back as far as 2005, making it likely that many Class Members will not be located.  In order to provide the best chance possible of a high claims rate, the parties have agreed that the Settlement Administrator will first update the Class Member addresses on the Class List by searching the national Change of Address database and thereafter will attempt to re-mail any undeliverable notices to either the applicable forwarding address or by reference to a single skip-trace or other search using the name, address, and/or Social Security Number of the Settlement Class Member involved. Even using the best administration process possible, it is likely that the claims rate will be 25% or less. (See Exhibit "6") To ensure the best claims participation rate possible it has been agreed that the Settlement Administrator and the Parties' Counsel will monitor the claims rate and request a second notice to Class Members who have not made claims at least 20 days before the end of the notice period if the claims rate is below twenty five percent.

**D.      Final Approval Hearing**

Plaintiffs request that the Final Fairness Hearing be set approximately 90 to 100 days after preliminary approval is granted.   That will permit the Claims Administrator to mail the notice, and for Class Counsel to prepare a report concerning any response to the same prior to the hearing.

**IV.      Conclusion**

Counsel for the parties have reached this settlement following extensive discussions and arm's length negotiations.   Plaintiffs respectfully request that the court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, and for such additional relief as this Court should deem proper.

Respectfully submitted,

DATED: August 26, 2015            SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

By:     */s/ Laureen F. Bagley*
Laureen F. Bagley
Attorneys for Plaintiffs

EXHIBITS & DECLARATIONS

Exhibit 1      Proposed Settlement Agreement

Exhibit 2      Notice of Proposed Class Action Settlement

Exhibit 3      Claim Form

Exhibit 4      Request for Exclusion

Exhibit 5      Declaration of Laureen Bagley

Exhibit 6      Declaration of Justin Parks

Proposed Order

- 22 -